UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

# 01CR1129

UNITED STATES OF AMERICA )

v. )

JOSEPH P. NICOSIA, JR. )



No.

Violations: Title 18, United States Code, Sections 2, 371, and 1033(c)(1); Title 26, United States Code, Sections 7201 and 7206(1)

<u>COUNT ONE</u>   JUDGE MORAN   FILED

MAGISTRATE JUDGE ASHMAN

DEC 18 2001

MICHAEL W. DOBBINS
CLERK, U. S. DISTRICT COURT

The SPECIAL JULY 2000-2 GRAND JURY charges:

1.    At times relevant to this indictment:

(a)    First Oak Brook Corp. Syndicate, Inc. ("First Oak Brook"), 1301 West 22nd Street, Oak Brook, Illinois, was engaged in the business of insurance as an insurance syndicate, and its activities affected interstate commerce. First Oak Brook was an underwriting member of the Illinois Insurance Exchange, through which it wrote insurance in approximately forty states and the District of Columbia. First Oak Brook wrote primarily commercial property insurance, insuring risks of various kinds of commercial entities, such as motels, restaurants, and bars, among others.

(b)    The Illinois Insurance Exchange provided regulatory and financial oversight of its member insurance syndicates, including First Oak Brook. Among the functions of the Illinois Insurance Exchange were the following: maintaining records of the financial condition of its member syndicates; issuing insurance policy binding numbers for policies that were written by its member syndicates; and acting as a cash collecting and

disbursement facility for all insurance-related transactions of its members. The Illinois Insurance Exchange was itself regulated by the State of Illinois Department of Insurance, which required the Exchange to submit a financial statement on an annual basis aggregating the financial records of its member syndicates.

(c)     The Illinois Insurance Exchange required its member syndicates to submit complete and accurate financial statements on a quarterly and annual basis, reflecting all income, expenses, assets, and liabilities. On an annual basis, each syndicate was further required to submit to the Illinois Insurance Exchange an independent auditors' opinion as to whether the year-end financial statement of the syndicate fairly presented the financial position of the syndicate. In addition, as a condition of authority to transact business on the Illinois Insurance Exchange, each insurance syndicate was required to be a member of the Illinois Insurance Exchange Guaranty Fund, Inc., a non-profit corporation established to protect insured parties by maintaining a fund for the payment of unsatisfied insurance claims made on any insolvent syndicate that had issued policies through the Illinois Insurance Exchange. This fund consisted of monies contributed by the member syndicates.

(d)     Defendant JOSEPH P. NICOSIA, JR. was the president and chief executive officer of First Oak Brook and its parent company, United Financial Group, Inc. of Illinois ("United Financial Group"). In addition, defendant JOSEPH P. NICOSIA, JR. was a member of the Board of Trustees of the Illinois Insurance Exchange. As a trustee of the Illinois Insurance Exchange, defendant JOSEPH P. NICOSIA, JR. owed a fiduciary duty

to provide conscientious, loyal, honest, faithful, disinterested, and unbiased services to the Exchange and its member syndicates. As an officer of First Oak Brook, defendant JOSEPH P. NICOSIA, JR. also owed the Illinois Insurance Exchange a duty to conduct First Oak Brook's affairs honestly and in good faith.

        (e)    "Co-Conspirator A" was executive vice president, chief financial officer, and treasurer of United Financial Group and its subsidiary companies, including First Oak Brook. As an officer of First Oak Brook, Co-Conspirator A owed the Illinois Insurance Exchange a duty to conduct First Oak Brook's affairs in good faith.

        (f)    Richard J. Murphy provided accounting services to United Financial Group and was employed as its controller. Richard J. Murphy also provided consulting services to First Oak Brook, including assistance in the preparation of First Oak Brook's quarterly and annual financial statements, which were maintained in the books and records of First Oak Brook and submitted to the Illinois Insurance Exchange.

    2.    From in or about 1995 through about September 1996, in the Northern District of Illinois, Eastern Division,

JOSEPH P. NICOSIA, JR.,

defendant herein, conspired with Co-Conspirator A and Richard J. Murphy, and with others, to commit an offense against the United States, more specifically, to make false entries of material fact in the financial statements of First Oak Brook, with intent to deceive other persons, namely, representatives of the Illinois Insurance Exchange, about the financial

3

condition and solvency of First Oak Brook, in violation of Title 18, United States Code, Section 1033(c)(1). As described in more detail below, defendant JOSEPH P. NICOSIA, JR. and his co-conspirators obtained bank loans and falsified financial statements in order to artificially inflate the value of First Oak Brook's assets, while concealing from the Illinois Insurance Exchange the true financial condition of First Oak Brook, all so that First Oak Brook could maintain authorization to issue insurance policies and collect insurance premiums from its customers, and so that defendant JOSEPH P. NICOSIA, JR. and his co-conspirators could continue to enrich themselves with salaries and other financial benefits from First Oak Brook, at a time when First Oak Brook was actually insolvent. By concealing First Oak Brook's true financial condition, defendant JOSEPH P. NICOSIA, JR. and his co-conspirators put at risk the assets of policy holders and the assets of the Illinois Insurance Exchange and its member syndicates.

### False Entries in the 1995 Year-End Financial Statement of First Oak Brook

3.     It was part of the conspiracy that defendant JOSEPH P. NICOSIA, JR., Co-Conspirator A, and Richard J. Murphy made materially false representations and omissions regarding the assets and liabilities of First Oak Brook in First Oak Brook's 1995 year-end financial statement, which Richard J. Murphy assisted in preparing and which was signed by defendant JOSEPH P. NICOSIA, JR. and Co-Conspirator A on about February 23, 1996. In that financial statement, defendant JOSEPH P. NICOSIA, JR., Co-Conspirator A, and Richard J. Murphy knowingly failed to disclose that First Oak Brook had obtained a

4

$1,000,000 loan from the Capitol Bank of Westmont in about October 1995. In that same financial statement, defendant JOSEPH P. NICOSIA, JR., Co-Conspirator A, and Richard J. Murphy falsely represented that First Oak Brook held certificates of deposit at Harris Bank in the total amount of $4,294,913. In fact, First Oak Brook did not have certificates of deposit or cash at Harris Bank in the total amount of $4,294,913, as defendant JOSEPH P. NICOSIA, JR., Co-Conspirator A, and Richard J. Murphy well knew. By overstating First Oak Brook's assets in that amount, and understating First Oak Brook's liabilities by failing to report the $1,000,000 loan referred to above, defendant JOSEPH P. NICOSIA, JR., Co-Conspirator A, and Richard J. Murphy attempted to lead the Illinois Insurance Exchange and insurance regulators to believe that First Oak Brook had a surplus in excess of $10,000,000, when in fact, First Oak Brook was insolvent.

4.     It was further part of the conspiracy that defendant JOSEPH P. NICOSIA, JR., Co-Conspirator A, and Richard J. Murphy falsely represented to the Illinois Insurance Exchange that First Oak Brook had collected millions of dollars in insurance premiums, when in fact, defendant JOSEPH P. NICOSIA, JR. and Co-Conspirator A had simply obtained another loan from the Capitol Bank of Westmont in about January 1996, which loan was in the amount of $2,500,000. In about February 1996, after the Capitol Bank of Westmont had disbursed $2,000,000 of the loan proceeds, Richard J. Murphy instructed an employee of United Financial Group ("Employee A") to wire transfer the loan proceeds to the Illinois Insurance Exchange, to be processed by the Exchange as if First Oak Brook had

collected new insurance premiums. The Illinois Insurance Exchange processed the loan proceeds as insurance premiums and then wire-transferred the funds back to First Oak Brook in accord with the standard practice of the Exchange. Richard J. Murphy subsequently instructed Employee A to wire-transfer the same loan proceeds back to the Illinois Insurance Exchange, on different days in different dollar amounts, all for the purpose of leading the Exchange to believe that First Oak Brook was collecting new insurance premiums, when in fact, they were simply recycling the same loan proceeds.

5.     It was further part of the conspiracy that defendant JOSEPH P. NICOSIA, JR., Co-Conspirator A, and Richard J. Murphy attempted to conceal First Oak Brook's true financial condition from a team of independent auditors who were responsible for auditing First Oak Brook's 1995 year-end financial statement and preparing an audit opinion which was required to be submitted to the Illinois Insurance Exchange. Defendant JOSEPH P. NICOSIA, JR., Co-Conspirator A, and Richard J. Murphy attempted to lead the auditors to believe that First Oak Brook had collected approximately $7,800,000 in receivables which were recorded on First Oak Brook's 1995 year-end financial statement as $4,000,000 in "subscriptions receivable" and $3,800,000 due under a "management agreement." Defendant JOSEPH P. NICOSIA, JR., Co-Conspirator A, and Richard J. Murphy created the false impression that First Oak Brook had collected the entire $7,800,000 in receivables by directing Employee A to move funds between different company bank accounts, on different days and in different amounts, using the same undisclosed bank loan proceeds referred to in

paragraph 4 above.

6.      It was further part of the conspiracy that during the course of the audit referred to above, Richard J. Murphy submitted to the auditors two letters that were allegedly signed by an employee of Harris Bank and that purported to confirm that First Oak Brook had certificates of deposit at Harris Bank in the amounts of $2,000,000 and $2,294,912.85, respectively. In fact, First Oak Brook had no such certificates of deposit at Harris Bank, and the signature of the bank employee had been forged by Co-Conspirator A. By submitting these false bank confirmations, and by misrepresenting that First Oak Brook had collected a total of $7,800,000 in receivables as described in paragraph 5 above, defendant JOSEPH P. NICOSIA, JR., Co-Conspirator A, and Richard J. Murphy attempted to lead the auditors to believe that First Oak Brook had a surplus in excess of $10,000,000, when in fact, First Oak Brook was insolvent.

7.      It was further part of the conspiracy that defendant JOSEPH P. NICOSIA, JR., Co-Conspirator A, and Richard J. Murphy represented to the auditors, in a letter dated April 8, 1996, that they had fully disclosed all material transactions and records in connection with the audit of First Oak Brook's 1995 year-end financial statement, when in fact, they had not done so. Among the false representations made by defendant JOSEPH P. NICOSIA, JR., Co-Conspirator A, and Richard J. Murphy in that letter were that "all financial records and related data" were made available to the auditors and that there were "no material transactions that have not been properly recorded in the accounting records underlying the

financial statements." Through this letter, and the other fraudulent acts and omissions described above, defendant JOSEPH P. NICOSIA, JR., Co-Conspirator A, and Richard J. Murphy caused the auditors to issue an audit report, dated April 30, 1996, which falsely represented that First Oak Brook's 1995 year-end financial statement presented fairly, in all material respects, the financial position of First Oak Brook as of December 31, 1995. Defendant JOSEPH P. NICOSIA, J. Co-Conspirator A, and Richard J. Murphy caused the auditors to issue this false audit report, knowing that it would be submitted to, and relied upon, by the Illinois Insurance Exchange.

<u>False Entries in the 1996 Quarterly Financial Statement of First Oak Brook</u>

8.     It was further part of the conspiracy that defendant JOSEPH P. NICOSIA, JR., Co-Conspirator A, and Richard J. Murphy made materially false representations and omissions in First Oak Brook's quarterly financial statement for the quarter ended March 31, 1996, which Richard J. Murphy assisted in preparing and which was signed by defendant JOSEPH P. NICOSIA, JR. and Co-Conspirator A on about May 14, 1996. In that financial statement, defendant JOSEPH P. NICOSIA, JR., Co-Conspirator A, and Richard J. Murphy knowingly failed to disclose the $2,500,000 loan from the Capitol Bank of Westmont (referred to in paragraph 4 above) and the prior $1,000,000 loan from the Capitol Bank of Westmont (referred to in paragraph 3 above) as liabilities of First Oak Brook. In that same financial statement, defendant JOSEPH P. NICOSIA, JR., Co-Conspirator A, and Richard J. Murphy falsely represented that First Oak Brook had collected a total of $4,000,000 in

8

subscriptions receivable and a total of $3,800,000 that had been due under a management agreement, when in fact, Employee A had simply moved funds between company accounts to create the false appearance that the receivables had been collected. By overstating First Oak Brook's assets in that amount, and understating First Oak Brook's liabilities by failing to report the loans referred to above, defendant JOSEPH P. NICOSIA, JR., Co-Conspirator A, and Richard J. Murphy attempted to lead the Illinois Insurance Exchange and insurance regulators to believe that First Oak Brook had a surplus in excess of $10,000,000, when in fact, First Oak Brook was insolvent.

Diversion of Assets for Personal Use

9.    It was further part of the conspiracy that defendant JOSEPH P. NICOSIA, JR. and Co-Conspirator A directed Richard J. Murphy and Employee A to use company funds to reimburse them for certain personal expenses, including, but not limited to, credit card bills, the income taxes withheld from their regular paychecks, and mortgage payments and real estate taxes owed on their private residences, all at a time when First Oak Brook was experiencing severe cash flow problems and had insufficient funds to remain solvent.

10.    As a result of the false statements, fraudulent acts, and omissions described above, the Illinois Insurance Exchange and the Illinois Department of Insurance did not discover that First Oak Brook was insolvent until about September 1996 at the earliest, by which time First Oak Brook had accumulated over $25,000,000 in unpaid insurance claims. After learning that First Oak Brook was insolvent, the Illinois Department of Insurance

obtained a court order requiring First Oak Brook to cease operations and canceling its outstanding insurance policies. First Oak Brook was placed into liquidation. As a further result of the false statements, fraudulent acts, and omissions described above, numerous First Oak Brook policy holders suffered financial losses because First Oak Brook was unable to pay their insurance claims or reimburse millions of dollars in insurance premiums which they had paid in advance of the cancellation of their policies.

<u>Overt Acts</u>

11.    In furtherance of the conspiracy, and in order to effect the goals of the conspiracy, the following acts, among others, were committed by defendant JOSEPH P. NICOSIA, JR. and his co-conspirators in the Northern District of Illinois:

(a)    On or about January 31, 1996, defendant JOSEPH P. NICOSIA, JR., Co-Conspirator A, and Employee A signed a corporate resolution authorizing them to obtain a $2,500,000 loan from the Capitol Bank of Westmont to First Oak Brook;

(b)    On or about February 8, 1996, Employee A wire-transferred approximately $2,000,000 in bank loan proceeds from an account of First Oak Brook at the Capitol Bank of Westmont to an account of the Illinois Insurance Exchange at the First National Bank of Chicago;

(c)    On or about February 21, 1996, Employee A wire-transferred $500,000 from First Oak Brook's account at the Capitol Bank of Westmont to an account of United Financial Group at First Bank, which funds were then withdrawn the following day and

deposited into another account held by First Oak Brook at First Bank;

(d)     On or about February 23, 1996, defendant JOSEPH P. NICOSIA, JR., Co-Conspirator A, and another officer of First Oak Brook signed the annual financial statement of First Oak Brook for the year ended December 31, 1995;

(e)     On or about March 1, 1996, Co-Conspirator A forged the signature of a Harris Bank employee on two letters which purported to confirm that First Oak Brook had certificates of deposit at Harris Bank in the amounts of $2,000,000 and $2,294,912.85;

(f)     In or about March 1996, Richard J. Murphy delivered the two forged letters referred to in subparagraph (e) above to the auditors who were conducting the audit of First Oak Brook's 1995 year-end financial statement;

(g)     On or about April 8, 1996, defendant JOSEPH P. NICOSIA, JR., Co-Conspirator A, and Richard J. Murphy signed the representation letter referred to in paragraph 7 above; and

(h)     On or about May 14, 1996, defendant JOSEPH P. NICOSIA, JR., Co-Conspirator A, and another officer of First Oak Brook signed the quarterly financial statement of First Oak Brook for the quarter ended March 31, 1996;

All in violation of Title18, United States Code, Section 371.

11

## COUNT TWO

The SPECIAL JULY 2000-2 GRAND JURY further charges:

1.      The Grand Jury realleges and incorporates herein by reference paragraph 1 of Count One of this indictment.

2.      On or about February 23, 1996, at Oak Brook, in the Northern District of Illinois, Eastern Division,

JOSEPH P. NICOSIA, JR.,

defendant herein, who was involved in a transaction relating to the conduct of affairs of First Oak Brook, which was engaged in the business of insurance and whose activities affected interstate commerce, knowingly made a false entry of material fact in a statement of First Oak Brook, with intent to deceive persons, namely, representatives of the Illinois Insurance Exchange, about the financial condition and solvency of First Oak Brook; more specifically, in the annual financial statement of First Oak Brook for the year ended December 31, 1995, defendant JOSEPH P. NICOSIA, JR. falsely represented that First Oak Brook had no borrowed money, when in fact First Oak Brook had obtained a $1,000,000 loan from the Capitol Bank of Westmont in about October 1995;

In violation of Title 18, United States Code, Section 1033(c)(1).

## COUNT THREE

The SPECIAL JULY 2000-2 GRAND JURY further charges:

1.     The Grand Jury realleges and incorporates herein by reference paragraph 1 of Count One of this indictment.

2.     On or about February 23, 1996, at Oak Brook, in the Northern District of Illinois, Eastern Division,

JOSEPH P. NICOSIA, JR.,

defendant herein, who was involved in a transaction relating to the conduct of affairs of First Oak Brook, which was engaged in the business of insurance and whose activities affected interstate commerce, knowingly made a false entry of material fact in a statement of First Oak Brook, with intent to deceive persons, namely, representatives of the Illinois Insurance Exchange, about the financial condition and solvency of First Oak Brook; more specifically, in the annual financial statement of First Oak Brook for the year ended December 31, 1995, defendant JOSEPH P. NICOSIA, JR. falsely represented that First Oak Brook had certificates of deposit at Harris Bank in the total amount of $4,294,913, when in fact it did not;

In violation of Title 18, United States Code, Section 1033(c)(1).

13

## COUNT FOUR

The SPECIAL JULY 2000-2 GRAND JURY further charges:

1.     The Grand Jury realleges and incorporates herein by reference paragraph 1 of Count One of this indictment.

2.     On or about February 23, 1996, at Oak Brook, in the Northern District of Illinois, Eastern Division,

JOSEPH P. NICOSIA, JR.,

defendant herein, who was involved in a transaction relating to the conduct of affairs of First Oak Brook, which was engaged in the business of insurance and whose activities affected interstate commerce, knowingly made a false entry of material fact in a statement of First Oak Brook, with intent to deceive persons, namely, representatives of the Illinois Insurance Exchange, about the financial condition and solvency of First Oak Brook; more specifically, in the annual financial statement of First Oak Brook for the year ended December 31, 1995, defendant JOSEPH P. NICOSIA, JR. falsely represented that First Oak Brook had a surplus of $10,179,085, when in fact it did not;

In violation of Title 18, United States Code, Section 1033(c)(1).

14

## COUNT FIVE

The SPECIAL JULY 2000-2 GRAND JURY further charges:

1.     The Grand Jury realleges and incorporates herein by reference paragraph 1 of Count One of this indictment.

2.     On or about April 30, 1996, at Oak Brook, in the Northern District of Illinois, Eastern Division,

JOSEPH P. NICOSIA, JR.,

defendant herein, who was involved in a transaction relating to the conduct of affairs of First Oak Brook, which was engaged in the business of insurance and whose activities affected interstate commerce, knowingly made a false entry of material fact in a statement of First Oak Brook, with intent to deceive persons, namely, representatives of the Illinois Insurance Exchange, about the financial condition and solvency of First Oak Brook; more specifically, in the independent auditors' report of the audit of First Oak Brook's annual financial statement for the year ended December 31, 1995, defendant JOSEPH P. NICOSIA, JR. knowingly caused others to falsely represent that First Oak Brook's financial statement presented fairly, in all material respects, the financial position of First Oak Brook as of December 31, 1995, when in fact it did not;

In violation of Title 18, United States Code, Sections 1033(c)(1) and 2.

## COUNT SIX

The SPECIAL JULY 2000-2 GRAND JURY further charges:

1.      The Grand Jury realleges and incorporates herein by reference paragraph 1 of Count One of this indictment.

2.      On or about May 14, 1996, at Oak Brook, in the Northern District of Illinois, Eastern Division,

JOSEPH P. NICOSIA, JR.,

defendant herein, who was involved in a transaction relating to the conduct of affairs of First Oak Brook, which was engaged in the business of insurance and whose activities affected interstate commerce, knowingly made a false entry of material fact in a statement of First Oak Brook, with intent to deceive persons, namely, representatives of the Illinois Insurance Exchange, about the financial condition and solvency of First Oak Brook; more specifically, in the quarterly statement of First Oak Brook for the quarter ended March 31, 1996, defendant JOSEPH P. NICOSIA, JR. falsely represented that First Oak Brook had no borrowed money, when in fact First Oak Brook had obtained a $1,000,000 loan from the Capitol Bank of Westmont in about October 1995;

In violation of Title 18, United States Code, Section 1033(c)(1).

## COUNT SEVEN

The SPECIAL JULY 2000-2 GRAND JURY further charges:

1.    The Grand Jury realleges and incorporates herein by reference paragraph 1 of Count One of this indictment.

2.    On or about May 14, 1996, at Oak Brook, in the Northern District of Illinois, Eastern Division,

JOSEPH P. NICOSIA, JR.,

defendant herein, who was involved in a transaction relating to the conduct of affairs of First Oak Brook, which was engaged in the business of insurance and whose activities affected interstate commerce, knowingly made a false entry of material fact in a statement of First Oak Brook, with intent to deceive persons, namely, representatives of the Illinois Insurance Exchange, about the financial condition and solvency of First Oak Brook; more specifically, in the quarterly statement of First Oak Brook for the quarter ended March 31, 1996, defendant JOSEPH P. NICOSIA, JR. falsely represented that First Oak Brook had no borrowed money, when in fact First Oak Brook had obtained a $2,500,000 loan from the Capitol Bank of Westmont in about January 1996;

In violation of Title 18, United States Code, Section 1033(c)(1).

## COUNT EIGHT

The SPECIAL JULY 2000-2 GRAND JURY further charges:

1.      The Grand Jury realleges and incorporates herein by reference paragraph 1 of Count One of this indictment.

2.      On or about May 14, 1996, at Oak Brook, in the Northern District of Illinois, Eastern Division,

JOSEPH P. NICOSIA, JR.,

defendant herein, who was involved in a transaction relating to the conduct of affairs of First Oak Brook, which was engaged in the business of insurance and whose activities affected interstate commerce, knowingly made a false entry of material fact in a statement of First Oak Brook, with intent to deceive persons, namely, representatives of the Illinois Insurance Exchange, about the financial condition and solvency of First Oak Brook; more specifically, in the quarterly statement of First Oak Brook for the quarter ended March 31, 1996, defendant JOSEPH P. NICOSIA, JR. falsely represented that First Oak Brook had collected $4,000,000 in "subscriptions receivable," when in fact it had not;

In violation of Title 18, United States Code, Section 1033(c)(1).

## COUNT NINE

The SPECIAL JULY 2000-2 GRAND JURY further charges:

1.      The Grand Jury realleges and incorporates herein by reference paragraph 1 of Count One of this indictment.

2.      On or about May 14, 1996, at Oak Brook, in the Northern District of Illinois, Eastern Division,

JOSEPH P. NICOSIA, JR.,

defendant herein, who was involved in a transaction relating to the conduct of affairs of First Oak Brook, which was engaged in the business of insurance and whose activities affected interstate commerce, knowingly made a false entry of material fact in a statement of First Oak Brook, with intent to deceive persons, namely, representatives of the Illinois Insurance Exchange, about the financial condition and solvency of First Oak Brook; more specifically, in the quarterly statement of First Oak Brook for the quarter ended March 31, 1996, defendant JOSEPH P. NICOSIA, JR. falsely represented that First Oak Brook had collected $3,800,000 pursuant to a "management agreement," when in fact it had not;

In violation of Title 18, United States Code, Section 1033(c)(1).

## COUNT TEN

The SPECIAL JULY 2000-2 GRAND JURY further charges:

1.      The Grand Jury realleges and incorporates herein by reference paragraph 1 of Count One of this indictment.

2.      On or about May 14, 1996, at Oak Brook, in the Northern District of Illinois, Eastern Division,

### JOSEPH P. NICOSIA, JR.,

defendant herein, who was involved in a transaction relating to the conduct of affairs of First Oak Brook, which was engaged in the business of insurance and whose activities affected interstate commerce, knowingly made a false entry of material fact in a statement of First Oak Brook, with intent to deceive persons, namely, representatives of the Illinois Insurance Exchange, about the financial condition and solvency of First Oak Brook; more specifically, in the quarterly statement of First Oak Brook for the quarter ended March 31, 1996, defendant JOSEPH P. NICOSIA, JR. falsely represented that First Oak Brook had a surplus of $10,089,643, when in fact it did not;

In violation of Title 18, United States Code, Section 1033(c)(1).

20

## COUNT ELEVEN

The SPECIAL JULY 2000-2 GRAND JURY further charges:

1.     The Grand Jury realleges and incorporates herein by reference paragraph 1 of Count One of this indictment.

2.     Defendant JOSEPH P. NICOSIA, JR. received, in calendar year 1995, total income of at least $773,199.91. By reason of this income, defendant JOSEPH P. NICOSIA, JR. was required by law, following the close of calendar year 1995 and on or before April 15, 1996, to make an income tax return to the Internal Revenue Service and to pay the income tax due and owing thereon. Based on the income received by defendant JOSEPH P. NICOSIA, JR. in calendar year 1995, he owed income tax to the United States in the total amount of at least $230,769.16.

3.     During calendar year 1995, and continuing through on or about April 3, 1996, in the Northern District of Illinois, Eastern Division,

JOSEPH P. NICOSIA, JR.,

defendant herein, a resident of Oak Brook, Illinois, who during calendar year 1995 was married, willfully attempted to evade and defeat at least $93,945.16 in income tax due and owing by him to the United States for calendar year 1995, by the following acts, among others:

(a)     directing employees of United Financial Group to issue checks to him, drawn on the account of a subsidiary corporation of United Financial Group, namely, United Commercial Affiliated, Inc., in amounts matching the amounts of income taxes and other

withholdings which had been properly deducted from his regular paychecks, totaling approximately $192,274.35;

   (b) directing employees of United Financial Group to pay part of the mortgage owed on his primary residence in Oak Brook, Illinois, with checks drawn on the account of United Commercial Affiliated, Inc., totaling approximately $20,640.00;

   (c) directing employees of United Financial Group to pay the real estate taxes owed on his primary residence in Oak Brook, Illinois, with checks drawn on the account of another subsidiary corporation of United Financial Group, namely, Combined Adjustment Company, Inc., totaling approximately $17,411.56;

   (d) using company credit cards for purely personal expenditures and purchases and then directing employees of United Financial Group to use company funds to pay the credit card bills; and

   (e) filing and causing to be filed with the Internal Revenue Service Center, at Kansas City, Missouri, a false and fraudulent joint United States Individual Income Tax Return (Form 1040 with schedules), on behalf of himself and his wife, which stated that their total income for calendar year 1995 was $542,874; that their joint taxable income for calendar year 1995 was $406,546; and that the amount of tax due and owing thereon was $136,824, whereas, as defendant JOSEPH P. NICOSIA, JR. well knew, their joint total and taxable income for calendar year 1995 was substantially greater than the sums reported and that they owed additional income tax to the United States;

  In violation of Title 26, United States Code, Section 7201.

## COUNT TWELVE

The SPECIAL JULY 2000-2 GRAND JURY further charges:

On or about April 3, 1996, in the Northern District of Illinois, Eastern Division,

JOSEPH P. NICOSIA, JR.,

defendant herein, a resident of Oak Brook, Illinois, who during calendar year 1995 was

married, willfully made and subscribed, and caused to be made and subscribed, a joint United

States Individual Income Tax Return (Form 1040 with schedules) for calendar year 1995, on

behalf of himself and his wife, which return was verified by a written declaration that it was

made under the penalties of perjury, was filed with the Internal Revenue Service, and which

defendant JOSEPH P. NICOSIA, JR. did not believe to be true and correct as to every

material matter contained therein, in that the return listed total income of $542,874 on Line

22, whereas in truth and fact, as defendant JOSEPH P. NICOSIA, JR. well knew, his total

income was greater than $542,874 in calendar year 1995;

In violation of Title 26, United States Code, Section 7206(1).

## COUNT THIRTEEN

The SPECIAL JULY 2000-2 GRAND JURY further charges:

1.      The Grand Jury realleges and incorporates herein by reference paragraph 1 of Count One of this indictment.

2.      Defendant JOSEPH P. NICOSIA, JR. received, in calendar year 1996, total income of at least $628,051.69.  By reason of this income, defendant JOSEPH P. NICOSIA, JR. was required by law, following the close of calendar year 1996 and on or before April 15, 1997, to make an income tax return to the Internal Revenue Service and to pay the income tax due and owing thereon.  Based on the income received by defendant JOSEPH P. NICOSIA, JR. in calendar year 1996, he owed income tax to the United States in the total amount of at least $161,857.49.

3.      During calendar year 1996, and continuing through on or about April 13, 1997, in the Northern District of Illinois, Eastern Division,

JOSEPH P. NICOSIA, JR.,

defendant herein, a resident of Oak Brook, Illinois, who during calendar 1996 was married, willfully attempted to evade and defeat at least $73,800.49 in income tax due and owing by him to the United States for calendar year 1996, by the following acts, among others:

(a)      directing employees of United Financial Group to issue checks to him, drawn on the account of a subsidiary corporation of United Financial Group, namely, United Commercial Affiliated, Inc., in amounts matching the amounts of income taxes and other

24

withholdings which had been properly deducted from his regular paychecks, totaling approximately $159,713.62;

(b)     directing employees of United Financial Group to pay part of the mortgage owed on his primary residence in Oak Brook, Illinois, with checks drawn on the account of United Commercial Affiliated, Inc., totaling approximately $12,040.00;

(c)     directing employees of United Financial Group to pay the real estate taxes owed on his primary residence in Oak Brook, Illinois, with checks drawn on the account of another subsidiary corporation of United Financial Group, namely, Combined Adjustment Company, Inc., totaling approximately $8,166.07;

(d)     using company credit cards for purely personal expenditures and purchases and then directing employees of United Financial Group to use company funds to pay the credit card bills; and

(e)     filing and causing to be filed with the Internal Revenue Service Center, at Kansas City, Missouri, a false and fraudulent joint United States Individual Income Tax Return (Form 1040 with schedules), on behalf of himself and his wife, which stated that their joint total income for calendar year 1996 was $348,770; that their joint taxable income for calendar year 1996 was $170,042; and that the amount of tax due and owing thereon was $58,241, whereas, as defendant JOSEPH P. NICOSIA, JR. well knew, their joint total and taxable income for calendar year 1996 was substantially greater than the sums reported and that they owed additional income tax to the United States;

In violation of Title 26, United States Code, Section 7201.

## COUNT FOURTEEN

The SPECIAL JULY 2000-2 GRAND JURY further charges:

On or about April 13, 1997, in the Northern District of Illinois, Eastern Division,

JOSEPH P. NICOSIA, JR.,

defendant herein, a resident of Oak Brook, Illinois, who during calendar year 1996 was

married, willfully made and subscribed, and caused to be made and subscribed, a joint United

States Individual Income Tax Return (Form 1040 with schedules) for calendar year 1996, on

behalf of himself and his wife, which return was verified by a written declaration that it was

made under the penalties of perjury, was filed with the Internal Revenue Service, and which

defendant JOSEPH P. NICOSIA, JR. did not believe to be true and correct as to every

material matter contained therein, in that the return listed total income of $348,770 on Line

22, whereas in truth and fact, as defendant JOSEPH P. NICOSIA, JR. well knew, his total

income was greater than $348,770 in calendar year 1996;

In violation of Title 26, United States Code, Section 7206(1).

A TRUE BILL:

_David L. Hassly_
FOREPERSON

_Patrick J. Fitzgerald_
UNITED STATES ATTORNEY

No.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

vs.

JOSEPH P. NICOSIA, JR.

I N D I C T M E N T

Violations: 18 USC §§ 371, 1033(c)(1);
26 USC §§ 7201, 7206(1)

_____
Foreman

A true bill,

_____

Filed in open court this _____ day of DEC 18 2001, A.D. 20____

MICHAEL W. DOBBINS

_____
Clerk

Bail, $ _____

PO 880.320